## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| | : | |
| RAVEN LEIGERTWOOD, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | No. 11-5457 |
| | : | |
| v. | : | |
| | : | |
| VIOLA LEIGERTWOOD, | : | |
| | : | |
| Defendant. | : | |
| | : | |

**MEMORANDUM**

**ROBERT F. KELLY, Sr. J.**                                                                                 **MAY 7, 2013**

Currently pending before the Court is the Motion for Summary Judgment filed by

Plaintiff, Raven Leigertwood ("Raven"), the Response in Opposition to Motion for Summary

Judgment filed by Defendant, Viola Leigertwood ("Viola"), and Replies filed thereto. For the

following reasons, the Motion for Summary Judgment will be granted.

**I.     BACKGROUND**

On or about August 26, 2008, Banner Life Insurance Company ("Banner Life") issued

insurance Policy Number 180200373 ("Banner Policy") in the face amount of $1,000,000.00 to

Veno E.E. Leigertwood, Jr. ("Veno"), insuring his life. (Interpleader Compl. ¶ 10.) Veno's wife,

Raven, is the primary beneficiary of the Banner Policy. (Id. ¶ 11.) Veno's mother, Viola, is the

contingent beneficiary of the Banner Policy. (Id.) Eighteen days after the policy was issued, on

September 13, 2008, Veno was murdered in the driveway of his home at 645 Church Lane,

Yeadon, Pennsylvania, as a result of a gun shot wound. (Id. ¶ 12.) Banner Life determined that

$1,000,000.00 is due and payable under the Policy as a result of Veno's death. (Id. ¶13.)

On September 24, 2008, Raven, as the named primary beneficiary under the Policy,

submitted to Banner Life a Proof of Death/Claimant's Statement seeking payment of the Policy

proceeds.  (Id. ¶ 14.)  The Delaware County Criminal Investigation Division identified Raven as

a "person of interest" regarding Veno's murder.  (Id. ¶ 17.)  Banner Life filed a Complaint In

Interpleader on August 30, 2011, in the District Court for the Eastern District of Pennsylvania,

Civ. Act. No. 11-5457.  (Doc. No. 1.)  Banner Life's action is based upon the Pennsylvania

Slayer's Act, 20 Pa. Cons. Stat. §§ 8811,[1] and its effect upon the distribution of the Banner

Policy's proceeds either to Raven, as the primary beneficiary, or Viola, as the contingent

beneficiary.  (Interpleader Compl. ¶¶ 22-23.)  Contemporaneous with the filing of its Complaint

In Interpleader, Banner Life deposited into the Registry of the Court the sum of $1,091,635.48,

the entire amount due under the Banner Policy.  (Id. ¶ 30.)  The Court accepted the Banner Policy

proceeds and discharged Banner Life from all further liability and obligation under the Banner

Policy.  (Doc. No. 11.)  The Court terminated Banner Life from the action and identified Raven

as Plaintiff and Viola as Defendant.   (Id.)

On July 17, 2012, Raven's attorney, Patrick T. Henigan, Esq. ("Henigan"), from the

Media, Pennsylvania, law firm of Eckell, Sparks, Levy, Auerbach, Monte, Sloane, Matthews &

Auslander, P.C. ("Media Firm") filed a Complaint for Distribution of Funds.[2]  (See Compl. For

Distr. of Funds.)  On August 29, 2012, Viola's attorney, John S. DiGiorgio, Esq.

---

[1] The Slayer's Act, provides in pertinent part, that "[n]o slayer shall in any way acquire any property or receive any benefit as the result of the death of the decedent."  20 Pa. Const. Stat. § 8802.

[2] This Court has diversity jurisdiction over the subject matter of this dispute pursuant to 28 U.S.C. § 1332.

("DiGiorgio"), filed an Answer arguing that Raven is still a person of interest in the murder of

Veno and the investigation was on-going.  (Doc. No. 18.)  He also requested that Raven's

Complaint be dismissed and that judgment be entered in Viola's favor.  (Id.)

Along with Viola's Answer, DiGiorgio filed a Motion to Disqualify Raven's counsel,

Henigan, due to the fact his Media Firm was also involved in the administration of Veno's Estate

in the Court of Common Pleas of Delaware County, Pennsylvania, Orphans' Division ("Orphans'

Court"), In Re: The Estate of Veno E.E. Leigertwood, No. 805 of 2008.  (Doc. No. 17.)  On

September 21, 2012, the Court held an oral argument regarding the Motion to Disqualify.  (See

Transcript of Oral Argument on 9/21/12.)  At the oral argument, Henigan explained that the

Media Firm did administer Veno's Estate, but he was not personally involved with the Orphans'

Court action or Veno's Estate.  (Id. at 5-6.)  Additionally, Henigan asserted that the Media Firm

never represented Raven in the Orphans' Court matter.  (Id. at 6.)  Also, he stated that DiGiorgio

represented Viola in the Orphans' Court during the entire administration of the Estate.  (Id. at 5.)

Since the instant case involves the Banner Life Policy and the Slayer's Act, and due to the fact

that Henigan said that the Estate was successfully administered and concluded and he had no

involvement in such, the Motion to Disqualify was denied.  (Id. at 11.)  During oral argument,

DiGiorgio stated that he did not intend to engage in any discovery.  (Id.)  Also, it was clarified

that neither side wanted a jury trial.  (Id. at 13.)

On October 26, 2012, Henigan filed a Motion for Summary Judgment.  (Doc. No. 22.)

On November 9, 2012, he filed a Motion for Sanctions against DiGiorgio.[3]  (Doc. No. 24.)  In

---

[3]In the Motion for Sanctions against DiGiorgio, Henigan argued that DiGiorgio's Response to the Motion
for Summary Judgment and Viola's Answer were intended to delay the distribution of the Banner Policy funds and
were in bad faith and unsupported by fact.  (See Mot. for Sanctions.)  Upon consideration of the Motion, as well as

November 2012, the parties filed responses, replies, sur-replies, and a supplement to the

outstanding motions.  (Doc. Nos. 23, 25, 27, 30.)  While deciding these Motions, the Court

became aware, for the first time, of another million dollar life insurance policy on Veno's life.

This policy was issued by West Coast Life Insurance Co. (Policy No. 203092967) ("West Coast

Policy").  (Transcript of Oral Argument on 2/5/13 at 10.)  Similar to the Banner Policy, the West

Coast Policy named Raven as beneficiary and Viola as contingent beneficiary.  (Pl.'s Mem. Law

Supp. Mot. for Summ. J. at 5.)

In his Motion for Summary Judgment, Henigan raised, *inter alia*, issue preclusion based

upon the distribution of the West Coast Policy proceeds to Raven through the administration of

Veno's Estate in the Orphans' Court.  (Id. at 8-11.)  Henigan's summary judgment argument

based upon issue preclusion asserted that Viola cannot relitigate the Pennsylvania Slayer's Act

issue in this action because the issue of Raven's disqualification pursuant to the Slayer's Act was

judicially determined by the Orphans' Court regarding the West Coast Policy.  (Id.)  He argued

that the Orphans' Court specifically addressed the disqualification of Raven under the Slayer's

Act ordering that the West Coast Policy proceeds be distributed to her.  (Id.)  DiGiorgio

responded to Henigan's issue preclusion argument by stating that Viola had agreed that some of

the policy proceeds from the West Coast Policy could be used to buy Raven the marital house,

but did not agree to the transfer of the remaining proceeds of the West Coast Policy to Raven.

(Def.'s Resp. Mot. for Summ. J. at 6-8.)

In order to understand DiGiorgio's argument, as well as to better understand the issue

preclusion claim, some background information is needed.  In the Orphans' Court on March 7,

DiGiorgio's Response, we find that sanctions are not warranted.  Consequently, the Motion for Sanctions is denied.

4

2012, an attorney from the Media Firm, Sam Auslander, Esq. ("Auslander"), filed a Petition for Sale of the Marital Home to Decedent's Wife and Transfer of Remaining Insurance Proceeds from West Coast Life Held in Escrow to Decedent's Wife ("Petition"). (Pl.'s Mot. for Summ. J.; Exs. D (Orphans' Court Docket Sheet), F (Petition)). The Petition was on behalf of Joseph L. Monte, Esq., the Administrator of the Estate. (Id.; Ex. F.) On March 8, 2012, the Orphans' Court judge issued a Preliminary Decree to show cause why the relief requested in the Petition should not be granted. (Id.; Ex. F (Preliminary Decree Order).) In response to the Petition for the Sale of the Marital Home and Transfer of the Remaining Insurance Proceeds, DiGiorgio sent a letter dated March 13, 2012, to Auslander stating that Viola had no objection to the sale of the marital home. (Id.; Ex. H.) DiGiorgio did not address the remaining issue regarding the transfer of the remaining proceeds to Raven in his letter. (Id.) Furthermore, he did not file any document with the Orphans' Court detailing his client's wishes. (Id.; Ex. D (Orphans' Court Docket Sheet)).

On April 10, 2012, a Final Decree was entered permitting the Administrator of the Estate to: sell the martial home to Raven for $180,000.00; transfer from the insurance monies held in escrow to Raven sufficient monies to purchase the martial home and to pay all expenses in connection therewith; and transfer the remaining balance of the insurance proceeds to Raven. (Id.; Ex. I (Final Decree).) DiGiorgio never alerted the Orphans' Court to the fact that Viola did not agree to the transfer of the remaining West Coast Policy proceeds to Raven. (Transcript of Oral Argument on 2/5/13 at 7, 9-11.) DiGiorgio never tried to correct the mistake. (Id.) It

appears that no one informed the Orphans' Court about the mistake.[4]

Regarding the matter at hand in the instant action, this Court held an oral argument on

February 5, 2013, on the Motion for Summary Judgment and Motion for Sanctions filed by

Raven.  (See Transcript of Oral Argument on 2/5/13.)  The Court insisted that Viola be present

for the oral argument.  During the oral argument, the Court explained to Viola that her attorney,

DiGiorgio, apparently has a conflict of interest with her because his actions in the Orphans'

Court concerning the West Coast Policy may directly impact his actions in the instant action.  (Id.

at 7-20)  That is, if DiGiorgio won the Slayer's Act issue in our case it would show that he may

have committed an error in the Orphans' Court regarding the awarding of the remaining proceeds

of the West Coast Policy to Raven.  I instructed Viola that there may be a possible conflict of

interest between herself and DiGiorgio concerning what occurred in the Orphans' Court with the

West Coast Policy and his representation of her in this action regarding the Banner Policy.  (Id. at

11-13.)  I further explained to Viola that she should seek independent counsel to determine

whether she wants to proceed with DiGiorgio or with a new attorney.  (Id.)  Viola stated that she

understood the situation.  (Id. at 12-13.)  The case was placed in suspense for thirty days and

Viola was informed that she had thirty days to contact independent counsel and decide how she

wanted to proceed.  (Id. at 22.)

On March 5, 2013, DiGiorgio contacted the Court's law clerk informing her that he spoke

with Viola and she wanted to withdraw from the case.  DiGiorgio explained that Viola wanted

him to represent her for the limited purpose of handling her withdrawal from the case.  DiGiorgio

---

[4]It is not clear why the Orphans' Court administered the West Coast Policy through the Estate, especially
since Banner Life choose to file a federal action concerning its Policy which has the same beneficiaries and includes
the same factual situation regarding its distribution as the West Coast Policy.

said that he would file a document with the Court regarding Viola's withdrawal. After speaking

with me, my law clerk informed DiGiorgio that he could file any document that he wanted, but

no action would be taken without Viola explaining her intentions in open court. No document

was ever filed. Viola has not withdrawn herself from the action.

On March 11, 2013, an order, under seal, was entered stating that a hearing be held on

March 25, 2013, for DiGiorgio to show cause why he should not be disqualified from

representing Viola. Viola was also ordered to attend the hearing. On March 18, 2013, DiGiorgio

filed a Motion to Withdraw as Attorney. (Doc. No. 32.) By Order dated March 18, 2013, the

Court granted DiGiorgio's Motion to Withdraw as Attorney. (Doc. No. 33.) Also, the Court

cancelled the hearing scheduled for March 25, 2013, and ordered that Viola had thirty days from

the date of the Order to find a new attorney and have the new attorney enter his or her

appearance. (Id.) Viola never contacted the Court within the thirty day time period. After not

hearing from Viola, an Order dated April 22, 2013, was entered setting forth that the Court will

decide the outstanding Motion for Summary Judgment on Monday, May 6, 2013. (Doc. No. 39.)

The Order further stated that Viola, on her own or though counsel, may supplement her responses

to the summary judgment motion on or before May 6, 2013. (Id.) As of today's date, the Court

has not heard from Viola. Consequently, we will proceed with deciding the outstanding Motion

for Summary Judgment.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 56(c) states that summary judgment is proper "if there is

no genuine issue as to any material fact and the moving party is entitled to judgment as a matter

of law." See Hines v. Consol. Rail Corp., 926 F.2d 262, 267 (3d Cir. 1991). The Court asks

"whether the evidence presents a sufficient disagreement to require submission to the jury or whether . . . one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986).  The moving party has the initial burden of informing the court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "A fact is material if it could affect the outcome of the suit after applying the substantive law.  Further, a dispute over a material fact must be 'genuine,' i.e., the evidence must be such 'that a reasonable jury could return a verdict in favor of the non-moving party.'"  Compton v. Nat'l League of Prof'l Baseball Clubs, 995 F. Supp. 554, 561 n.14 (E.D. Pa. 1998).

Summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex, 477 U.S. at 322.  Once the moving party has produced evidence in support of summary judgment, the non-moving party must go beyond the allegations set forth in its pleadings and counter with evidence that presents "specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e); see Big Apple BMW, Inc. v. BMW of N. Am. Inc., 974 F.2d 1358, 1362-63 (3d Cir. 1992).  "More than a mere scintilla of evidence in its favor" must be presented by the non-moving party in order to overcome a summary judgment motion.  Tziatzios v. United States, 164 F.R.D. 410, 411-12 (E.D. Pa. 1996). If the court determines that there are no genuine issues of material fact, then summary judgment will be granted.  Celotex, 477 U.S. at 322.

## III.    DISCUSSION

Raven's Motion for Summary Judgment is premised upon the following two arguments:

(1) Viola's claims are barred by the Doctrine of Issue Preclusion; and (2) Raven is not

disqualified as a beneficiary under the Slayer's Act.  (See Pl.'s Mem. Law Support Mot. for

Summ. J. at 8-13.)  Due to the fact the Viola has never responded to the Court after her counsel,

DiGiorgio, withdrew from the action, the Court will rely upon Viola's Responses to Raven's

Motion for Summary Judgment that were filed on her behalf by DiGiorgio while he was still

representing her.[5]  In response to Raven's Summary Judgment Motion, Viola argues that issue

preclusion does not apply to this case and judgment should be entered in her favor because Raven

is disqualified as a beneficiary under the Slayer's Act.  (Def.'s Mem. Law Supp. Resp. Mot. for

Summ. J. at 1-8.)  Upon consideration of all of the parties' submissions, we find that issue

preclusion does not apply.  However, we conclude that Raven is entitled to summary judgment

because Viola has not submitted evidence presenting specific facts showing a genuine issue of

material fact that Raven is disqualified as a beneficiary under the Slayer's Act.

### A.      Issue Preclusion

"Issue preclusion bars a second or successive litigation of an issue of fact or law that was

actually litigated and resolved in an entire litigation, even if the issue recurs in the context of a

different claim."  Kligman v. IRS, No. 09-5941, 2010 WL 1659643, at *2 (E.D. Pa. Apr. 26,

2010) (citing Taylor v. Sturgell, 553 U.S. 880, 892 (2008)).  Raven relies upon the distribution of

life insurance policy proceeds from the West Coast Policy to her through the administration of

the Estate in the Delaware County Court of Common Pleas, Orphans' Court Division as a

---

[5] The Court notes that it does not casually rely upon any filings on Viola's behalf by DiGiorgio in this case given the fact that it appears that he has a conflict of interest with Viola.  However, Viola has not responded in any way to maintain this action since DiGiorgio's withdrawal even though she has been given several chances in the interest of justice.  Thus, we will rely upon the responses filed by DiGiorgio as opposed to no responses at all.

premise for issue preclusion. (Pl.'s Mot. Summ. J. at 8-11.) Specifically, she asserts that

"insurance proceeds from a policy similar to that issued by Banner Life were placed in the

Orphans' Court with the specific condition that 'If Raven Leigertwood is disqualified by reason

of the Slayer's Act of being a beneficiary under her husband's Estate, the balance of the proceeds

in possession of Joseph L. Monte, Jr., Esquire [Estate Administrator] shall be payable to Viola

Leigertwood. If Raven is not so disqualified, said proceeds shall be payable to her.'" (Id. at 9.)

She argues that the Slayer's Act was at issue in the Orphans' Court and she was awarded the

proceeds of the West Coast Policy in a state court case identical to this federal action. (Id.)

Arguing against issue preclusion, Viola asserts that the Slayer's Act and its application to

the distribution of the West Coast Policy proceeds was never determined on the merits. (Def.'s

Resp. Mot. for Summ. J. at 6-8.) She argues that the action was decided on the Orphans' Court's

mistaken belief that she consented to the transfer of the remaining West Coast Policy proceeds to

Raven after agreeing to permit the distribution of proceeds for Raven to purchase the marital

home, when, in fact, she had only agreed to the distribution of the proceeds of the sale of the

marital home. (Id.)

The Court takes this opportunity to reiterate that it was not until reviewing Raven's

Motion for Summary Judgment that it was first made aware of the West Coast Policy and the

Orphans' Court distribution of the proceeds to Raven through the Estate. Although I tried to

have counsel explain exactly why the West Coast Policy was administered through Veno's

Estate, I never received a full and fair answer. (Transcript of Oral Argument on 2/5/13 at 10-22.)

Additionally, I was unable to ascertain how much of the proceeds of the West Coast Policy was

actually given to Raven and what happened to the other money. (Id.) It was upon learning about

the distribution of the proceeds of the West Coast Policy that the conflict of interest at hand

between DiGiorgio and his client, Viola, became clear to the Court.  In fact, to this day, the Court

remains unclear about what actually occurred in the Orphans' Court regarding the West Coast

Policy, and certainly cannot rely upon what happened there to determine the outcome of this

action.

      "In determining the preclusive effect of a state court judgment, we apply the rendering

state's law of issue preclusion."  M&M Stone Co. v. Pennsylvania, 388 F. App'x 156, 161 (3d

Cir. 2010) (citation omitted).  Under Pennsylvania law, the following conditions must exist

before issue preclusion may be invoked:

> (1) the issue decided in the prior adjudication was identical with
> the one presented in the later action;
>
> (2) there was a final judgment on the merits;
>
> (3) the party against whom the plea is asserted was a party or in
> privity with a party to the prior adjudication; and
>
> (4) the party against whom it is asserted has had a full and fair
> opportunity to litigate the issue in question in a prior action.

Id. (citing Shuder v. McDonald's Corp., 859 F.2d 266, 273 (3d Cir. 1988)).

      Given the unique and confusing circumstances surrounding the awarding of the

remaining proceeds of the West Coast Policy to Raven in the Orphans' Court, the Court finds

that issue preclusion does not apply.  From statements of both parties' counsel, as well as Viola

herself, it appears that the Orphans' Court awarded Raven the proceeds on a mistaken belief that

Viola had consented to the distribution.  (Transcript of Oral Argument on 2/5/13 at 8-22.)  The

Orphans' Court did not decide whether Raven was disqualified from receiving the West Coast

Policy proceeds under the Slayer's Act based on the merits of the issue.  In fact, there does not

appear to be any action by the Orphans' Court specifically addressing and deciding the Slayer's

Act issue on its merits.

Additionally, it is not clear that Viola had a full and fair opportunity to litigate the

Slayer's Act and its application to the distribution of the West Coast Policy proceeds to Raven in

the Orphans' Court.  It appears that Viola consented to allowing some of the West Coast Policy

proceeds to purchase the martial home for Raven, but not to the transfer of the remaining

proceeds.  It was not until the Court explained to Viola that Raven also received the remaining

proceeds from the West Coast Policy that she stated that Viola did not understand that at the

time, but she understands what happened now.  (Id. at 8-9.)  It cannot be said that Viola received

a full and fair opportunity to litigate the Slayer's Act in the Orphans' Court.  We clearly cannot

rely upon that action as the premise for barring the instant action based on the Slayer's Act and

the Banner Life Policy.  In light of the aforementioned, Raven's Motion for Summary Judgment

based upon issue preclusion is denied.

### B.    Slayer's Act Claim

The crux of this case is whether Raven has adequately stated a claim for entitlement to

benefits under the Banner Policy.  Raven argues that, as the designated beneficiary under the

Policy, she is clearly entitled to the proceeds.  Viola asserts that Raven was responsible for the

murder of Veno and, therefore, is barred from any portion of the Policy proceeds under

Pennsylvania's Slayer's Act, 20 Pa. Cons. Stat. § 8801.  Instead, as contingent beneficiary under

the Policy, Viola argues that the proceeds of the Policy should be distributed to her.

As previously explained, Pennsylvania's Slayer's Act, provides in pertinent part, that

"[n]o slayer shall in any way acquire any property or receive any benefit as the result of the death of the decedent." 20 Pa. Cons. Stat. § 8802. (See supra n.1; see also Rottmund v. Continental Assur. Co., 761 F. Supp. 1203, 1209 (E.D. Pa. 1990) (stating that the Slayer's Act "disentitles a murderer of an insured to the benefit of his criminal act"). The Act further defines a "slayer" as "any person who participates, either as a principal or as an accessory before the fact, in the willful and unlawful killing of any other person." Id. § 8801. These directives "shall not be considered penal in nature, but shall be construed broadly in order to effectuate the policy of [Pennsylvania] that no person shall be allowed to profit by his own wrong, wherever committed." Id. § 8815.

"The party opposing the interest of an alleged 'slayer,' however, bears the burden of proving that the killing was done both willfully and unlawfully." Diener v. Renfrew Centers, Inc., No. 11-4404, 2011 WL 4401720, at *6 (E.D. Pa. Sept. 22, 2011) (citing Wellons v. Met. Life Ins. Co., 12 Pa. D&C.3d 19, 111 (1979)). In an action under the Slayer's Act, it is important to note that the burdens of proof differ in the criminal and the civil context. In civil trials, such as this case, parties need only prove their case by a preponderance of the evidence; whereas, a conviction in a criminal case results from proof beyond a reasonable doubt. See Metropolitan Life Ins. Co. v. Hamm, No. 01-6340, 2003 WL 22518183, at *5 (E.D. Pa. Oct. 10, 2003) (citing Prudential Ins. Co. of Am. v. Doane, 339 F. Supp. 1240, 1242 (E.D. Pa. 1972)). Thus, "an acquittal [in a criminal action] does not foreclose challenge under the Slayer's Act." Id.

In this case, Raven has never been arrested, formally charged or convicted of the murder of Veno. As Raven points out, Eddie Poindexter Tate ("Tate") was convicted of the murder in February 2013, after a criminal trial in the Delaware County Court of Common Pleas (CP-23-

13

0004358-2012).[6]  (Pl.'s Supplement to Mot. for Summ. J. at 2.)  These facts, alone, do not

dispose of the action.  Raven also relies upon an affidavit from Donald Molineux ("Molineux"),

the Police Chief for the Borough of Yeadon, Pennsylvania, stating that "[o]ur investigation has

demonstrated that Raven Leigertwood is no longer a person of interest or a suspect in the

murder."  (Pl.'s Mem. Law Support Mot. Summ. J.; Ex. B (Molineux Aff.).)

　　　　Viola argues that Raven is still a person of interest in Veno's murder and, because of that,

she is precluded from receiving the Policy proceeds under the Slayer's Act.  Viola relies upon an

April 2, 2012 letter from Jackson M. Stewart, Jr. ("Stewart"), Chief Deputy District Attorney for

Delaware County, which states that the Delaware County District Attorneys's office is unwilling

to exonerate Raven and there is a possibility that she will be charged with Veno's murder.

(Def.'s Resp. Mot. for Summ. J.; Ex. A (Letter from Stewart dated Apr. 2, 2012).)  Specifically,

the letter states:

> At the present time we have no information to indicate the
> involvement of Raven Leigertwood as either an accomplice or
> coconspirator in the death of her husband Veno Leigertwood.
>
> However, there remains the possibility that either Tate or the two
> possible co-conspirators could supply information which may
> implicate Raven Leigertwood, either directly or indirectly, in Mr.
> Leigertwood's death.  As I indicated, this Office has no
> information at the present time to believe that such complicity
> exists.
>
> Based on the foregoing, we are therefore unable to state, formally
> or informally, that Raven Leigertwood is or is not a "person of

---

[6]On April 3, 2013, Tate was sentenced to life in prison without the possibility of parole and was given an additional eight and a half to twenty years.  See Alex Rode, *Life Sentence Issued for Philly Man in Yeadon Murder*, THE DELAWARE COUNTY DAILY TIMES (May 7, 2013), http://www.delcotimes.com/articles/2013/04/03/news.  There appears to be two co-conspirators who may have been involved in the killing while attempting to rob Veno, but they have not been charged due to insufficient evidence.  (Id.; Def.'s Resp. Mot. Summ. J.; Ex. A (Correspondence dated Apr. 2, 2012, from Jackson M. Stewart, Jr.).)

14

interest" in this matter.

(Id.)  Additionally, Viola relies upon a November 2, 2012 letter from Stewart to DiGiorgio in

which he states that the information in the April 2, 2012 letter remains unchanged and the

District Attorney's Office "has received no additional information since the date of that

correspondence which would alter in any respect the position of this Office as stated therein."

(Def.'s Resp. Mot. for Summ. J.; Ex. B (Letter from Stewart dated Nov. 2, 2012).)

        While these letters do show that the Delaware County District Attorney's Office still

believes that Raven may have played a role in her husband's death, it is not proof of such.  In

fact, the suspicion of Raven could continue on indefinitely and, unfortunately, never be fully

resolved.  Viola argues that the suspicion of Raven was intense and has not been dispelled;

however, suspicion alone, without any evidentiary support, is not enough to satisfy her burden of

proof under the Slayer's Act.  (Def.'s Supplemental Mem. Law Opp'n Mot. for Summ. J. at 2.)

We awaited the final resolution of Tate's homicide trial in the Delaware County Court of

Common Pleas which resulted in his conviction of second-degree murder, robbery and related

offenses.  Tate's conviction does not exonerate Raven from being involved in the homicide.

Notably, "[t]he [Slayer's Act] contains no requirement that a conviction precede application of

its provisions."  Diener, 2011 WL 4401720, at *6 (citing In re Klein's Estate, 378 A.2d 1182,

1186 (Pa. 1977)).  However, the Court has not been given any evidence in this civil action to

present a material issue of fact showing that Raven is indeed involved in Veno's murder and may

not receive financial benefits from his death through the Slayer's Act.

        By failing to engage in any real discovery at all, and relying solely upon the criminal

matter which resulted in a conviction of another man, Tate, Viola has failed to establish a

genuine issue of material fact to survive summary judgment.  This civil matter was ripe for

discovery of such issues as: who sought out the Banner Life Policy; what were the circumstances

surrounding it; what were the premiums and who paid them; what was the state of the marriage

between Veno and Raven; what were the married couple's financial circumstances and how did

they affect their marriage; what was the full record of the murder investigation by the

investigative agencies, including the FBI; and what was Raven's reaction and subsequent acts

after the murder and since that time.  (Transcript of Oral Argument on 2/5/13 at 14.)  Although

there was fertile ground for discovery and the making of civil action under the Slayer's Act, no

such time, diligence or attention was exerted.  Given these circumstances, we are left with no

choice but to find that Viola has not presented any evidence establishing an issue of material fact

showing that Raven is Veno's slayer as defined by the Slayer's Act.  As a result, the Court must

grant Raven's Motion for Summary Judgment.  As such, Raven is entitled to a judgment

awarding her the Banner Life Policy proceeds.

## IV.     CONCLUSION

Upon consideration of the entire case before me, I conclude that summary judgment

should be granted in Raven's favor.  Raven is not entitled to judgment based on issue preclusion.

However, she is entitled to summary judgment because Viola has not established a genuine issue

as to any material fact showing that Raven is disqualified from receiving the Banner Policy

proceeds under the Slayer's Act.  Thus, Raven's Motion for Summary Judgment is granted.

An appropriate Order follows.