# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RAVEN LEIGERTWOOD, | CIVIL ACTION |
| Plaintiff, | No. 11-5457 |
| v. | |
| VIOLA LEIGERTWOOD, | |
| Defendant. | |

## MEMORANDUM

**ROBERT F. KELLY, Sr. J.**                                                                                   **MAY 7, 2013**

Currently pending before the Court is the Motion for Summary Judgment filed by Plaintiff, Raven Leigertwood ("Raven"), the Response in Opposition to Motion for Summary Judgment filed by Defendant, Viola Leigertwood ("Viola"), and Replies filed thereto. For the following reasons, the Motion for Summary Judgment will be granted.

**I.    BACKGROUND**

On or about August 26, 2008, Banner Life Insurance Company ("Banner Life") issued insurance Policy Number 180200373 ("Banner Policy") in the face amount of $1,000,000.00 to Veno E.E. Leigertwood, Jr. ("Veno"), insuring his life. (Interpleader Compl. ¶ 10.) Veno's wife, Raven, is the primary beneficiary of the Banner Policy. (Id. ¶ 11.) Veno's mother, Viola, is the contingent beneficiary of the Banner Policy. (Id.) Eighteen days after the policy was issued, on September 13, 2008, Veno was murdered in the driveway of his home at 645 Church Lane, Yeadon, Pennsylvania, as a result of a gun shot wound. (Id. ¶ 12.) Banner Life determined that $1,000,000.00 is due and payable under the Policy as a result of Veno's death. (Id. ¶13.)

On September 24, 2008, Raven, as the named primary beneficiary under the Policy, submitted to Banner Life a Proof of Death/Claimant's Statement seeking payment of the Policy proceeds. (Id. ¶ 14.) The Delaware County Criminal Investigation Division identified Raven as a "person of interest" regarding Veno's murder. (Id. ¶ 17.) Banner Life filed a Complaint In Interpleader on August 30, 2011, in the District Court for the Eastern District of Pennsylvania, Civ. Act. No. 11-5457. (Doc. No. 1.) Banner Life's action is based upon the Pennsylvania Slayer's Act, 20 Pa. Cons. Stat. §§ 8811,[1] and its effect upon the distribution of the Banner Policy's proceeds either to Raven, as the primary beneficiary, or Viola, as the contingent beneficiary. (Interpleader Compl. ¶¶ 22-23.) Contemporaneous with the filing of its Complaint In Interpleader, Banner Life deposited into the Registry of the Court the sum of $1,091,635.48, the entire amount due under the Banner Policy. (Id. ¶ 30.) The Court accepted the Banner Policy proceeds and discharged Banner Life from all further liability and obligation under the Banner Policy. (Doc. No. 11.) The Court terminated Banner Life from the action and identified Raven as Plaintiff and Viola as Defendant. (Id.)

On July 17, 2012, Raven's attorney, Patrick T. Henigan, Esq. ("Henigan"), from the Media, Pennsylvania, law firm of Eckell, Sparks, Levy, Auerbach, Monte, Sloane, Matthews & Auslander, P.C. ("Media Firm") filed a Complaint for Distribution of Funds.[2] (See Compl. For Distr. of Funds.) On August 29, 2012, Viola's attorney, John S. DiGiorgio, Esq.

---

[1] The Slayer's Act, provides in pertinent part, that "[n]o slayer shall in any way acquire any property or receive any benefit as the result of the death of the decedent." 20 Pa. Const. Stat. § 8802.

[2] This Court has diversity jurisdiction over the subject matter of this dispute pursuant to 28 U.S.C. § 1332.

2

("DiGiorgio"), filed an Answer arguing that Raven is still a person of interest in the murder of Veno and the investigation was on-going. (Doc. No. 18.) He also requested that Raven's Complaint be dismissed and that judgment be entered in Viola's favor. (Id.)

Along with Viola's Answer, DiGiorgio filed a Motion to Disqualify Raven's counsel, Henigan, due to the fact his Media Firm was also involved in the administration of Veno's Estate in the Court of Common Pleas of Delaware County, Pennsylvania, Orphans' Division ("Orphans' Court"), In Re: The Estate of Veno E.E. Leigertwood, No. 805 of 2008. (Doc. No. 17.) On September 21, 2012, the Court held an oral argument regarding the Motion to Disqualify. (See Transcript of Oral Argument on 9/21/12.) At the oral argument, Henigan explained that the Media Firm did administer Veno's Estate, but he was not personally involved with the Orphans' Court action or Veno's Estate. (Id. at 5-6.) Additionally, Henigan asserted that the Media Firm never represented Raven in the Orphans' Court matter. (Id. at 6.) Also, he stated that DiGiorgio represented Viola in the Orphans' Court during the entire administration of the Estate. (Id. at 5.) Since the instant case involves the Banner Life Policy and the Slayer's Act, and due to the fact that Henigan said that the Estate was successfully administered and concluded and he had no involvement in such, the Motion to Disqualify was denied. (Id. at 11.) During oral argument, DiGiorgio stated that he did not intend to engage in any discovery. (Id.) Also, it was clarified that neither side wanted a jury trial. (Id. at 13.)

On October 26, 2012, Henigan filed a Motion for Summary Judgment. (Doc. No. 22.) On November 9, 2012, he filed a Motion for Sanctions against DiGiorgio.[3] (Doc. No. 24.) In

---

[3] In the Motion for Sanctions against DiGiorgio, Henigan argued that DiGiorgio's Response to the Motion for Summary Judgment and Viola's Answer were intended to delay the distribution of the Banner Policy funds and were in bad faith and unsupported by fact. (See Mot. for Sanctions.) Upon consideration of the Motion, as well as

November 2012, the parties filed responses, replies, sur-replies, and a supplement to the outstanding motions. (Doc. Nos. 23, 25, 27, 30.) While deciding these Motions, the Court became aware, for the first time, of another million dollar life insurance policy on Veno's life. This policy was issued by West Coast Life Insurance Co. (Policy No. 203092967) ("West Coast Policy"). (Transcript of Oral Argument on 2/5/13 at 10.) Similar to the Banner Policy, the West Coast Policy named Raven as beneficiary and Viola as contingent beneficiary. (Pl.'s Mem. Law Supp. Mot. for Summ. J. at 5.)

In his Motion for Summary Judgment, Henigan raised, *inter alia*, issue preclusion based upon the distribution of the West Coast Policy proceeds to Raven through the administration of Veno's Estate in the Orphans' Court. (Id. at 8-11.) Henigan's summary judgment argument based upon issue preclusion asserted that Viola cannot relitigate the Pennsylvania Slayer's Act issue in this action because the issue of Raven's disqualification pursuant to the Slayer's Act was judicially determined by the Orphans' Court regarding the West Coast Policy. (Id.) He argued that the Orphans' Court specifically addressed the disqualification of Raven under the Slayer's Act ordering that the West Coast Policy proceeds be distributed to her. (Id.) DiGiorgio responded to Henigan's issue preclusion argument by stating that Viola had agreed that some of the policy proceeds from the West Coast Policy could be used to buy Raven the marital house, but did not agree to the transfer of the remaining proceeds of the West Coast Policy to Raven. (Def.'s Resp. Mot. for Summ. J. at 6-8.)

In order to understand DiGiorgio's argument, as well as to better understand the issue preclusion claim, some background information is needed. In the Orphans' Court on March 7,

---

DiGiorgio's Response, we find that sanctions are not warranted. Consequently, the Motion for Sanctions is denied.

2012, an attorney from the Media Firm, Sam Auslander, Esq. ("Auslander"), filed a Petition for Sale of the Marital Home to Decedent's Wife and Transfer of Remaining Insurance Proceeds from West Coast Life Held in Escrow to Decedent's Wife ("Petition"). (Pl.'s Mot. for Summ. J.; Exs. D (Orphans' Court Docket Sheet), F (Petition)). The Petition was on behalf of Joseph L. Monte, Esq., the Administrator of the Estate. (Id.; Ex. F.) On March 8, 2012, the Orphans' Court judge issued a Preliminary Decree to show cause why the relief requested in the Petition should not be granted. (Id.; Ex. F (Preliminary Decree Order).) In response to the Petition for the Sale of the Marital Home and Transfer of the Remaining Insurance Proceeds, DiGiorgio sent a letter dated March 13, 2012, to Auslander stating that Viola had no objection to the sale of the marital home. (Id.; Ex. H.) DiGiorgio did not address the remaining issue regarding the transfer of the remaining proceeds to Raven in his letter. (Id.) Furthermore, he did not file any document with the Orphans' Court detailing his client's wishes. (Id.; Ex. D (Orphans' Court Docket Sheet)).

On April 10, 2012, a Final Decree was entered permitting the Administrator of the Estate to: sell the martial home to Raven for $180,000.00; transfer from the insurance monies held in escrow to Raven sufficient monies to purchase the martial home and to pay all expenses in connection therewith; and transfer the remaining balance of the insurance proceeds to Raven. (Id.; Ex. I (Final Decree).) DiGiorgio never alerted the Orphans' Court to the fact that Viola did not agree to the transfer of the remaining West Coast Policy proceeds to Raven. (Transcript of Oral Argument on 2/5/13 at 7, 9-11.) DiGiorgio never tried to correct the mistake. (Id.) It

appears that no one informed the Orphans' Court about the mistake.[4]

Regarding the matter at hand in the instant action, this Court held an oral argument on February 5, 2013, on the Motion for Summary Judgment and Motion for Sanctions filed by Raven. (See Transcript of Oral Argument on 2/5/13.) The Court insisted that Viola be present for the oral argument. During the oral argument, the Court explained to Viola that her attorney, DiGiorgio, apparently has a conflict of interest with her because his actions in the Orphans' Court concerning the West Coast Policy may directly impact his actions in the instant action. (Id. at 7-20) That is, if DiGiorgio won the Slayer's Act issue in our case it would show that he may have committed an error in the Orphans' Court regarding the awarding of the remaining proceeds of the West Coast Policy to Raven. I instructed Viola that there may be a possible conflict of interest between herself and DiGiorgio concerning what occurred in the Orphans' Court with the West Coast Policy and his representation of her in this action regarding the Banner Policy. (Id. at 11-13.) I further explained to Viola that she should seek independent counsel to determine whether she wants to proceed with DiGiorgio or with a new attorney. (Id.) Viola stated that she understood the situation. (Id. at 12-13.) The case was placed in suspense for thirty days and Viola was informed that she had thirty days to contact independent counsel and decide how she wanted to proceed. (Id. at 22.)

On March 5, 2013, DiGiorgio contacted the Court's law clerk informing her that he spoke with Viola and she wanted to withdraw from the case. DiGiorgio explained that Viola wanted him to represent her for the limited purpose of handling her withdrawal from the case. DiGiorgio

---

[4] It is not clear why the Orphans' Court administered the West Coast Policy through the Estate, especially since Banner Life choose to file a federal action concerning its Policy which has the same beneficiaries and includes the same factual situation regarding its distribution as the West Coast Policy.

said that he would file a document with the Court regarding Viola's withdrawal. After speaking with me, my law clerk informed DiGiorgio that he could file any document that he wanted, but no action would be taken without Viola explaining her intentions in open court. No document was ever filed. Viola has not withdrawn herself from the action.

On March 11, 2013, an order, under seal, was entered stating that a hearing be held on March 25, 2013, for DiGiorgio to show cause why he should not be disqualified from representing Viola. Viola was also ordered to attend the hearing. On March 18, 2013, DiGiorgio filed a Motion to Withdraw as Attorney. (Doc. No. 32.) By Order dated March 18, 2013, the Court granted DiGiorgio's Motion to Withdraw as Attorney. (Doc. No. 33.) Also, the Court cancelled the hearing scheduled for March 25, 2013, and ordered that Viola had thirty days from the date of the Order to find a new attorney and have the new attorney enter his or her appearance. (Id.) Viola never contacted the Court within the thirty day time period. After not hearing from Viola, an Order dated April 22, 2013, was entered setting forth that the Court will decide the outstanding Motion for Summary Judgment on Monday, May 6, 2013. (Doc. No. 39.) The Order further stated that Viola, on her own or though counsel, may supplement her responses to the summary judgment motion on or before May 6, 2013. (Id.) As of today's date, the Court has not heard from Viola. Consequently, we will proceed with deciding the outstanding Motion for Summary Judgment.

## II. <u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure 56(c) states that summary judgment is proper "if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." See <u>Hines v. Consol. Rail Corp.</u>, 926 F.2d 262, 267 (3d Cir. 1991). The Court asks

"whether the evidence presents a sufficient disagreement to require submission to the jury or whether . . . one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). The moving party has the initial burden of informing the court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "A fact is material if it could affect the outcome of the suit after applying the substantive law. Further, a dispute over a material fact must be 'genuine,' i.e., the evidence must be such 'that a reasonable jury could return a verdict in favor of the non-moving party.'" Compton v. Nat'l League of Prof'l Baseball Clubs, 995 F. Supp. 554, 561 n.14 (E.D. Pa. 1998).

Summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Once the moving party has produced evidence in support of summary judgment, the non-moving party must go beyond the allegations set forth in its pleadings and counter with evidence that presents "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see Big Apple BMW, Inc. v. BMW of N. Am. Inc., 974 F.2d 1358, 1362-63 (3d Cir. 1992). "More than a mere scintilla of evidence in its favor" must be presented by the non-moving party in order to overcome a summary judgment motion. Tziatzios v. United States, 164 F.R.D. 410, 411-12 (E.D. Pa. 1996). If the court determines that there are no genuine issues of material fact, then summary judgment will be granted. Celotex, 477 U.S. at 322.

### III. DISCUSSION

Raven's Motion for Summary Judgment is premised upon the following two arguments:

(1) Viola's claims are barred by the Doctrine of Issue Preclusion; and (2) Raven is not disqualified as a beneficiary under the Slayer's Act. (See Pl.'s Mem. Law Support Mot. for Summ. J. at 8-13.) Due to the fact the Viola has never responded to the Court after her counsel, DiGiorgio, withdrew from the action, the Court will rely upon Viola's Responses to Raven's Motion for Summary Judgment that were filed on her behalf by DiGiorgio while he was still representing her.[5] In response to Raven's Summary Judgment Motion, Viola argues that issue preclusion does not apply to this case and judgment should be entered in her favor because Raven is disqualified as a beneficiary under the Slayer's Act. (Def.'s Mem. Law Supp. Resp. Mot. for Summ. J. at 1-8.) Upon consideration of all of the parties' submissions, we find that issue preclusion does not apply. However, we conclude that Raven is entitled to summary judgment because Viola has not submitted evidence presenting specific facts showing a genuine issue of material fact that Raven is disqualified as a beneficiary under the Slayer's Act.

    **A.**    ***Issue Preclusion***

"Issue preclusion bars a second or successive litigation of an issue of fact or law that was actually litigated and resolved in an entire litigation, even if the issue recurs in the context of a different claim." Kligman v. IRS, No. 09-5941, 2010 WL 1659643, at *2 (E.D. Pa. Apr. 26, 2010) (citing Taylor v. Sturgell, 553 U.S. 880, 892 (2008)). Raven relies upon the distribution of life insurance policy proceeds from the West Coast Policy to her through the administration of the Estate in the Delaware County Court of Common Pleas, Orphans' Court Division as a

---

[5]The Court notes that it does not casually rely upon any filings on Viola's behalf by DiGiorgio in this case given the fact that it appears that he has a conflict of interest with Viola. However, Viola has not responded in any way to maintain this action since DiGiorgio's withdrawal even though she has been given several chances in the interest of justice. Thus, we will rely upon the responses filed by DiGiorgio as opposed to no responses at all.

premise for issue preclusion. (Pl.'s Mot. Summ. J. at 8-11.) Specifically, she asserts that "insurance proceeds from a policy similar to that issued by Banner Life were placed in the Orphans' Court with the specific condition that 'If Raven Leigertwood is disqualified by reason of the Slayer's Act of being a beneficiary under her husband's Estate, the balance of the proceeds in possession of Joseph L. Monte, Jr., Esquire [Estate Administrator] shall be payable to Viola Leigertwood. If Raven is not so disqualified, said proceeds shall be payable to her.'" (Id. at 9.) She argues that the Slayer's Act was at issue in the Orphans' Court and she was awarded the proceeds of the West Coast Policy in a state court case identical to this federal action. (Id.)

Arguing against issue preclusion, Viola asserts that the Slayer's Act and its application to the distribution of the West Coast Policy proceeds was never determined on the merits. (Def.'s Resp. Mot. for Summ. J. at 6-8.) She argues that the action was decided on the Orphans' Court's mistaken belief that she consented to the transfer of the remaining West Coast Policy proceeds to Raven after agreeing to permit the distribution of proceeds for Raven to purchase the marital home, when, in fact, she had only agreed to the distribution of the proceeds of the sale of the marital home. (Id.)

The Court takes this opportunity to reiterate that it was not until reviewing Raven's Motion for Summary Judgment that it was first made aware of the West Coast Policy and the Orphans' Court distribution of the proceeds to Raven through the Estate. Although I tried to have counsel explain exactly why the West Coast Policy was administered through Veno's Estate, I never received a full and fair answer. (Transcript of Oral Argument on 2/5/13 at 10-22.) Additionally, I was unable to ascertain how much of the proceeds of the West Coast Policy was actually given to Raven and what happened to the other money. (Id.) It was upon learning about

the distribution of the proceeds of the West Coast Policy that the conflict of interest at hand between DiGiorgio and his client, Viola, became clear to the Court. In fact, to this day, the Court remains unclear about what actually occurred in the Orphans' Court regarding the West Coast Policy, and certainly cannot rely upon what happened there to determine the outcome of this action.

"In determining the preclusive effect of a state court judgment, we apply the rendering state's law of issue preclusion." M&M Stone Co. v. Pennsylvania, 388 F. App'x 156, 161 (3d Cir. 2010) (citation omitted). Under Pennsylvania law, the following conditions must exist before issue preclusion may be invoked:

> (1) the issue decided in the prior adjudication was identical with the one presented in the later action;
>
> (2) there was a final judgment on the merits;
>
> (3) the party against whom the plea is asserted was a party or in privity with a party to the prior adjudication; and
>
> (4) the party against whom it is asserted has had a full and fair opportunity to litigate the issue in question in a prior action.

Id. (citing Shuder v. McDonald's Corp., 859 F.2d 266, 273 (3d Cir. 1988)).

Given the unique and confusing circumstances surrounding the awarding of the remaining proceeds of the West Coast Policy to Raven in the Orphans' Court, the Court finds that issue preclusion does not apply. From statements of both parties' counsel, as well as Viola herself, it appears that the Orphans' Court awarded Raven the proceeds on a mistaken belief that Viola had consented to the distribution. (Transcript of Oral Argument on 2/5/13 at 8-22.) The Orphans' Court did not decide whether Raven was disqualified from receiving the West Coast

Policy proceeds under the Slayer's Act based on the merits of the issue. In fact, there does not appear to be any action by the Orphans' Court specifically addressing and deciding the Slayer's Act issue on its merits.

Additionally, it is not clear that Viola had a full and fair opportunity to litigate the Slayer's Act and its application to the distribution of the West Coast Policy proceeds to Raven in the Orphans' Court. It appears that Viola consented to allowing some of the West Coast Policy proceeds to purchase the martial home for Raven, but not to the transfer of the remaining proceeds. It was not until the Court explained to Viola that Raven also received the remaining proceeds from the West Coast Policy that she stated that Viola did not understand that at the time, but she understands what happened now. (Id. at 8-9.) It cannot be said that Viola received a full and fair opportunity to litigate the Slayer's Act in the Orphans' Court. We clearly cannot rely upon that action as the premise for barring the instant action based on the Slayer's Act and the Banner Life Policy. In light of the aforementioned, Raven's Motion for Summary Judgment based upon issue preclusion is denied.

### B. *Slayer's Act Claim*

The crux of this case is whether Raven has adequately stated a claim for entitlement to benefits under the Banner Policy. Raven argues that, as the designated beneficiary under the Policy, she is clearly entitled to the proceeds. Viola asserts that Raven was responsible for the murder of Veno and, therefore, is barred from any portion of the Policy proceeds under Pennsylvania's Slayer's Act, 20 Pa. Cons. Stat. § 8801. Instead, as contingent beneficiary under the Policy, Viola argues that the proceeds of the Policy should be distributed to her.

As previously explained, Pennsylvania's Slayer's Act, provides in pertinent part, that

12

"[n]o slayer shall in any way acquire any property or receive any benefit as the result of the death of the decedent." 20 Pa. Cons. Stat. § 8802. (See supra n.1; see also Rottmund v. Continental Assur. Co., 761 F. Supp. 1203, 1209 (E.D. Pa. 1990) (stating that the Slayer's Act "disentitles a murderer of an insured to the benefit of his criminal act"). The Act further defines a "slayer" as "any person who participates, either as a principal or as an accessory before the fact, in the willful and unlawful killing of any other person." Id. § 8801. These directives "shall not be considered penal in nature, but shall be construed broadly in order to effectuate the policy of [Pennsylvania] that no person shall be allowed to profit by his own wrong, wherever committed." Id. § 8815.

"The party opposing the interest of an alleged 'slayer,' however, bears the burden of proving that the killing was done both willfully and unlawfully." Diener v. Renfrew Centers, Inc., No. 11-4404, 2011 WL 4401720, at *6 (E.D. Pa. Sept. 22, 2011) (citing Wellons v. Met. Life Ins. Co., 12 Pa. D&C.3d 19, 111 (1979)). In an action under the Slayer's Act, it is important to note that the burdens of proof differ in the criminal and the civil context. In civil trials, such as this case, parties need only prove their case by a preponderance of the evidence; whereas, a conviction in a criminal case results from proof beyond a reasonable doubt. See Metropolitan Life Ins. Co. v. Hamm, No. 01-6340, 2003 WL 22518183, at *5 (E.D. Pa. Oct. 10, 2003) (citing Prudential Ins. Co. of Am. v. Doane, 339 F. Supp. 1240, 1242 (E.D. Pa. 1972)). Thus, "an acquittal [in a criminal action] does not foreclose challenge under the Slayer's Act." Id.

In this case, Raven has never been arrested, formally charged or convicted of the murder of Veno. As Raven points out, Eddie Poindexter Tate ("Tate") was convicted of the murder in February 2013, after a criminal trial in the Delaware County Court of Common Pleas (CP-23-

13

0004358-2012).[6] (Pl.'s Supplement to Mot. for Summ. J. at 2.) These facts, alone, do not dispose of the action. Raven also relies upon an affidavit from Donald Molineux ("Molineux"), the Police Chief for the Borough of Yeadon, Pennsylvania, stating that "[o]ur investigation has demonstrated that Raven Leigertwood is no longer a person of interest or a suspect in the murder." (Pl.'s Mem. Law Support Mot. Summ. J.; Ex. B (Molineux Aff.).)

Viola argues that Raven is still a person of interest in Veno's murder and, because of that, she is precluded from receiving the Policy proceeds under the Slayer's Act. Viola relies upon an April 2, 2012 letter from Jackson M. Stewart, Jr. ("Stewart"), Chief Deputy District Attorney for Delaware County, which states that the Delaware County District Attorneys's office is unwilling to exonerate Raven and there is a possibility that she will be charged with Veno's murder. (Def.'s Resp. Mot. for Summ. J.; Ex. A (Letter from Stewart dated Apr. 2, 2012).) Specifically, the letter states:

> At the present time we have no information to indicate the involvement of Raven Leigertwood as either an accomplice or coconspirator in the death of her husband Veno Leigertwood.
>
> However, there remains the possibility that either Tate or the two possible co-conspirators could supply information which may implicate Raven Leigertwood, either directly or indirectly, in Mr. Leigertwood's death. As I indicated, this Office has no information at the present time to believe that such complicity exists.
>
> Based on the foregoing, we are therefore unable to state, formally or informally, that Raven Leigertwood is or is not a "person of

---

[6] On April 3, 2013, Tate was sentenced to life in prison without the possibility of parole and was given an additional eight and a half to twenty years. See Alex Rode, *Life Sentence Issued for Philly Man in Yeadon Murder*, THE DELAWARE COUNTY DAILY TIMES (May 7, 2013), http://www.delcotimes.com/articles/2013/04/03/news. There appears to be two co-conspirators who may have been involved in the killing while attempting to rob Veno, but they have not been charged due to insufficient evidence. (Id.; Def.'s Resp. Mot. Summ. J.; Ex. A (Correspondence dated Apr. 2, 2012, from Jackson M. Stewart, Jr.).)

14

interest" in this matter.

(Id.) Additionally, Viola relies upon a November 2, 2012 letter from Stewart to DiGiorgio in which he states that the information in the April 2, 2012 letter remains unchanged and the District Attorney's Office "has received no additional information since the date of that correspondence which would alter in any respect the position of this Office as stated therein." (Def.'s Resp. Mot. for Summ. J.; Ex. B (Letter from Stewart dated Nov. 2, 2012).)

While these letters do show that the Delaware County District Attorney's Office still believes that Raven may have played a role in her husband's death, it is not proof of such. In fact, the suspicion of Raven could continue on indefinitely and, unfortunately, never be fully resolved. Viola argues that the suspicion of Raven was intense and has not been dispelled; however, suspicion alone, without any evidentiary support, is not enough to satisfy her burden of proof under the Slayer's Act. (Def.'s Supplemental Mem. Law Opp'n Mot. for Summ. J. at 2.) We awaited the final resolution of Tate's homicide trial in the Delaware County Court of Common Pleas which resulted in his conviction of second-degree murder, robbery and related offenses. Tate's conviction does not exonerate Raven from being involved in the homicide. Notably, "[t]he [Slayer's Act] contains no requirement that a conviction precede application of its provisions." Diener, 2011 WL 4401720, at *6 (citing In re Klein's Estate, 378 A.2d 1182, 1186 (Pa. 1977)). However, the Court has not been given any evidence in this civil action to present a material issue of fact showing that Raven is indeed involved in Veno's murder and may not receive financial benefits from his death through the Slayer's Act.

By failing to engage in any real discovery at all, and relying solely upon the criminal matter which resulted in a conviction of another man, Tate, Viola has failed to establish a

15

genuine issue of material fact to survive summary judgment. This civil matter was ripe for discovery of such issues as: who sought out the Banner Life Policy; what were the circumstances surrounding it; what were the premiums and who paid them; what was the state of the marriage between Veno and Raven; what were the married couple's financial circumstances and how did they affect their marriage; what was the full record of the murder investigation by the investigative agencies, including the FBI; and what was Raven's reaction and subsequent acts after the murder and since that time. (Transcript of Oral Argument on 2/5/13 at 14.) Although there was fertile ground for discovery and the making of civil action under the Slayer's Act, no such time, diligence or attention was exerted. Given these circumstances, we are left with no choice but to find that Viola has not presented any evidence establishing an issue of material fact showing that Raven is Veno's slayer as defined by the Slayer's Act. As a result, the Court must grant Raven's Motion for Summary Judgment. As such, Raven is entitled to a judgment awarding her the Banner Life Policy proceeds.

## IV. CONCLUSION

Upon consideration of the entire case before me, I conclude that summary judgment should be granted in Raven's favor. Raven is not entitled to judgment based on issue preclusion. However, she is entitled to summary judgment because Viola has not established a genuine issue as to any material fact showing that Raven is disqualified from receiving the Banner Policy proceeds under the Slayer's Act. Thus, Raven's Motion for Summary Judgment is granted.

An appropriate Order follows.